G. PATRICK CIVILLE (pciville@civilletang.com)
JOYCE C.H. TANG (jtang@civilletang.com)
CIVILLE & TANG, PLLC
Suite 200, 330 Hernan Cortez Ave.
Hagåtña, GU 96910
Tel: (671) 472-8868

**IN THE DISTRICT COURT OF GUAM**

TANOTA DEVELOPMENT, LLC, d/b/a ) Civil Case No.: _____
Dusit Thani Hotel Guam; BAYVIEW II, LLC, )
d/b/a Dusit Beach Resort Guam; BAYVIEW I, )
LLC; and BAYVIEW III, LLC. )
           ) **COMPLAINT**
       Plaintiffs, )
           )
     vs. )
           )
DB INSURANCE CO., LTD. and AIOI NISSAY )
DOWA INSURANCE CO. LTD., )
           )
       Defendants. )
           )

  Plaintiffs, Tanota Development, LLC, Bayview II, LLC, Bayview I, LLC, and Bayview III, LLC (collectively, "Plaintiffs") complaining of the Defendants, DB Insurance Co. and Aioi Nissay Dowa Insurance Co., Ltd. (collectively "Defendants) allege and respectfully show to the Court as follows:

**INTRODUCTION**

  1.  This is an insurance coverage action relating to losses sustained by Plaintiffs as a result of Typhoon Mawar.

  2.  Typhoon Mawar struck Guam on May 24, 2023. During the two years since then, Plaintiffs have bent over backwards and provided immense amounts of information and data underlying their claims. Defendants, in contrast, at every juncture have sought excuses to delay and avoid paying the amounts rightfully claimed by Plaintiffs for losses covered under the insurance policies described herein. Defendants have hired incompetent and unqualified consultants, have failed

to follow good insurance practices, have impaired Plaintiffs' abilities to repair their property and restore it to the condition befitting luxury hotels and high-end retail businesses, and have left the Plaintiffs in a desperate and potentially disastrous position.

3. For nearly two years, the Defendants have used a strategy of calculated incompetence to avoid their obligations both under the insurance contracts and the law. In doing so, they have paid less than ten percent of what is owed under the insurance policies and a small fraction of the Plaintiffs' Losses. Plaintiffs bring this action to seek the compensation owed to them but also to bring to light behavior that has cost insureds, and Guam, untold millions of dollars.

**PARTIES**

4. Plaintiff Tanota Development LLC ("Dusit Thani") is a Guam limited liability company, doing business as Dusit Thani Hotel Guam, located at or about 1227 Pale San Victores Road, Tumon, Guam 96913.

5. Plaintiff Dusit Thani is a luxury hotel located at 1251 Pale San Vitores Road, Tumon, Guam 96913. Plaintiff Dusit Thani owns real and business personal property at that location and at all relevant times operated a luxury hotel at that location (the "Dusit Thani Insured Premises").

6. At all relevant times, Dusit Thani was insured under a policy issued by defendants DB Insurance Co., Ltd. and Aioi Nissay Dowa Insurance Co. bearing policy number 20221215882-001 (KMF5477-D02) (the "Dusit Thani Policy").

7. Plaintiff Bayview II, LLC ("Dusit Beach") is a Guam limited liability company, doing business as Dusit Beach Resort Guam, located at or about 1255 Pale San Vitores Road, Tumon, Guam 96913.

8. Plaintiff Dusit Beach is a luxury hotel located at 1255 Pale San Vitores Road, Tumon, Guam 96913. Plaintiff Dusit Beach owns real and business personal property at that location and at all relevant times operated a luxury hotel at that location (the "Dusit Beach Insured Premises").

9. At all relevant times, Dusit Beach was insured under a policy issued by defendants DB Insurance Co., Ltd. and Aioi Nissay Dowa Insurance Co. bearing policy number 20221215883-001 (the "Dusit Beach Policy").

10. Plaintiffs Bayview I, LLC and Bayview III, LLC (collectively, "Dusit Plaza") are Guam limited liability companies, known as Dusit Plaza, located at or about 1275 Pale San Victores Road, Tumon Bay, Guam 96913.

11. Plaintiffs Dusit Plaza is an upscale plaza and shopping center with many high-end luxury retail stores located at 1275 Pale San Vitores Road, Tumon, Guam 96913. Plaintiffs Dusit Plaza own real and business personal property at that location and at all relevant times operated a plaza and shopping center at that location (the "Dusit Plaza Insured Premises" and, together with the Dusit Thani Insured Premises and the Dusit Beach Insured Premises, the "Insured Premises").

12. At all relevant times, Dusit Plaza was insured under a policy issued by defendants DB Insurance Co., Ltd. bearing policy number 20230100749-001 (the "Dusit Plaza Policy" and, together with the Dusit Thani Policy and Dusit Plaza Policy, the "Policies").

13. Upon information and belief, Defendant DB Insurance Co., Ltd. ("DB") is a South Korean Corporation with a principal place of business in Seoul, South Korea.

14. At all relevant times herein, Defendant DB regularly conducted and transacted business in the Territory of Guam, and/or regularly contracted to supply their insurance products within the Territory of Guam.

15. Upon information and belief, Defendant Aioi Nissay Dowa Insurance Co. ("Aioi" and, together with DB, "Defendants") is a Japanese Corporation with a principal place of business in Tokyo, Japan.

16. At all relevant times herein, Defendant Aioi regularly conducted and transacted business in the Territory of Guam, and/or regularly contracted to supply their insurance products within the Territory of Guam.

**JURISDICTION AND VENUE**

17. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because this is an action

between citizens of a State and citizens of a foreign state, and the amount in controversy exceeds the sum or value of $75,000,00, exclusive of interest and costs.

18.     Venue is proper in this district as a substantial part of the events giving rise to the claim occurred in Guam.

## FACTUAL BACKGROUND

19.      On or about May 24, 2023, Typhoon Mawar hit Guam, damaging the Dusit Insured Premises (the "Loss").

20.     The Dusit Thani, Dusit Beach, and Dusit Plaza Policies were in full force and effect on May 24, 2023.

21.     Plaintiffs had paid all premiums due and owing and were otherwise in compliance with the Policies at the time of the Loss.

22.     The Loss caused significant damages to the Insured Premises.

23.     Plaintiffs promptly reported their claims to Defendants and also sought (and received) permission to begin necessary emergency repairs.  Defendants' representatives inspected the property within weeks of the Loss.

24.     For months, Defendants did nothing.  By the fall of 2023, after repeated requests for payment or correspondence with the Defendants, the lack of substantive progress forced Plaintiffs to retain professional assistance at considerable cost.

25.     Defendants had, at this time, also retained an adjusting firm purportedly to assist in the process, a Korea-based firm called Incok.  Upon information and belief, Incok does not appear to be licensed in Guam.  Incok and Defendants have provided a series of inconsistent and incredible explanations for Incok's involvement.  Incok's representatives have also proven to be incapable of effective communication, unaware of American insurance adjusting laws or practice, and unqualified to evaluate losses of this magnitude.

26.     In late September, 2023, Plaintiffs commenced a detailed and lengthy in-person inspection of the premises, including bringing in a professional hygienist to conduct necessary moisture mapping and testing.

- 4 -

27. On October 11, 2023, the consultants retained by the insured and the carrier held a conference call. Plaintiffs' representatives emphasized the importance of expediting the claim to release critical funds and the need for a timely joint inspection of the premises. Plaintiffs' representatives also explained the necessity of testing by professional hygienists, and emphasized the importance of timely performing business-income calculations.

28. Incok (on behalf of Defendants) refused the Plaintiffs' many invitations to conduct a joint inspection when the insured's estimators were present.

29. Instead, Incok insisted on appearing for a single-day inspection on October 26, 2023, during which it viewed only a small portion of the Insured Premises. By this point – five months after the Losses – significant mitigation and emergency repair work had already been completed, such that Incok's delay meant it was unable to view much of the damages still present due to the temporary repairs in an effort to minimize loss of business.

30. Following the October 11, 2023 conference call, Plaintiffs and their representatives repeatedly followed up requesting that Defendants make advances they had promised. By this point, the typhoon was some five months in the past. On November 11, 2023, Defendants finally responded, stating that Defendants required damages to be submitted in order to release an interim payment, and promising to expedite review.

31. On November 13, 2023, the Plaintiffs submitted proofs of loss for the structure claims, supported by detailed estimates. Plaintiffs' consultants had prepared these extraordinarily detailed and lengthy estimates within two months of their first involvement of the claim. It would take Defendants nearly two years to prepare their own estimate. Defendants acknowledged receipt but otherwise did nothing in response.

32. Shortly thereafter, the Plaintiffs' representative submitted a business-income loss calculation for Dusit Thani and continued to follow up regarding the requests for advances.

33. On December 6, 2023 – now more than six months post-loss – the two sides again held a conference call, during which Plaintiffs were told for the first time that Incok was retaining another company to prepare an estimate of damages, Calpac.

34. Upon information and belief, Calpac is primarily a networking/cabling contractor with little or no experience in building construction or estimating major insurance losses. It was clear at the time Calpac was brought in that it was unqualified for the work it was assigned, and this only became more evident as the claims progressed. Calpac's clear lack of qualifications and the retaining of unqualified adjustors, coupled with Defendants' inexcusably dilatory behavior in adjusting the claims and making appropriate payments, establish an intentional strategy by Defendants to delay and underpay claims.

35. On December 6, 2023, Defendants confirmed a site visit scheduled for the following week (subsequently delayed until December 27), including Incok and Calpac. At this time, Defendants promised their insureds that the insurance companies' evaluation would be complete by February 2024. (Predictably, this would not happen.)

36. In December 2023 and January 2024, the insureds and their representatives continued to repeatedly contact the carriers and their representatives to secure release of the desperately needed advances. Concurrently, the Plaintiffs' consultants communicated with Calpac, which plainly was ill-prepared for any investigation or evaluation of the claim. Despite the Plaintiffs' request for a joint inspection of the property, Calpac embarked on unilateral, unplanned, and unscheduled inspections of the premises. The Calpac inspection was not competently performed and again demonstrated that it lacked even rudimentary knowledge of proper adjusting practices and standards.

37. Finally, in mid-January, 2024 – now seven months after the loss – the Defendants indicated they would approve a single $1 million advance for one of the claims, a mere fraction of the total loss (which exceeds $60 million). The Defendants insisted that Dusit Thani fill out a form of its choosing, that included unnecessary and inaccurate language regarding the handling of the claims, before it would process the payments, despite clear guidance that such requirements violate the insurer's duty of good faith and fair dealing.

38. After its inspections, Calpac indicated that it believed a hygienist was required to inspect the loss. The Plaintiffs' consultants had explained months earlier that a hygienist analyst

was necessary, and had already shared the results of testing done by a hygienist the Plaintiffs had retained at their own expense.

39. Nonetheless, in February of 2024, Defendants decided, apparently for the first time, that they needed to involve a hygienist. On February 13, 2024, the hygienists retained by each side conducted a joint inspection of the property.

40. Upon information and belief, the hygienists substantially agreed on the findings.

41. Following the inspection, Plaintiffs again expressed concerns about Calpac's ability to properly evaluate a loss of this magnitude.

42. During this period, the Plaintiffs were also discussing their business-income claims with the defendants and their representatives. The insureds had presented business income claims in December and January. In late January, 2024, Defendants stated that they intended to apply a "market condition" adjustment to the Dusit business-income claims, where the purported "market condition" was – remarkably – Typhoon Mawar, the covered peril that was the basis of the Plaintiffs' claims. This is an extraordinary and unsupportable position.

43. In the month after these inspections, nothing happened. The Plaintiffs continued their efforts to move the claims along, while the Defendants continued to make excuses.

44. Then, on March 22, 2024, Defendants confirmed the release of limited advances totaling $3 million ($1 million to Dusit Thani and $2 million to Dusit Beach).

45. At the same time, Defendants stated that they would not be using the report ***prepared by the hygienist that Defendants themselves hired***. No explanation was provided, although it is not difficult to identify the reason for this refusal – Defendants knew the hygienist report would support the claim as presented by the Plaintiffs.

46. On March 26, 2024 – just past the ten-month anniversary of the loss – the parties had a conference call in which the Plaintiffs and their representatives again articulated their frustration with the delays, lack of communication, lack of knowledge or experience with construction and U.S. insurance law, and substantive confusion regarding the claim valuation. At this time, the insureds requested that Defendants involve U.S.-based personnel to ensure both effective

communication and compliance with Defendants' obligations under U.S. law.

47. Again, nothing happened.

48. On April 4, 2024, the Defendants authorized the first, small advance payments on the loss, but there was no movement on advancing the evaluation of the Losses.

49. Given the continued lack of progress and repeated failures of communication, the Plaintiffs requested confirmation as to who, exactly, was representing Defendants in connection with the loss. In several instances, the plaintiffs were informed that the approval of DB's Guam General Manager, Yeon Jo Choi, was required for various necessary decisions. Repeatedly, Mr. Choi refused to communicate with the plaintiffs or provide any required authorizations. Mr. Choi's behavior impeded resolution of the claims, seemingly intentionally.

50. On April 14, 2024, for the first time, Defendants provide their own calculations of the Plaintiffs' business-income losses. (The Plaintiffs had provided their estimates months earlier.) As previously indicated, these calculations contained a "Market Condition Adjustment" for the impact of Typhoon Mawar. Defendants claimed that this adjustment was based on a legal opinion, but refused to provide that opinion or any of the legal bases allegedly underlying that opinion.

51. Despite having agreed to the advance payments, Defendants on April 24, 2024 stated that they would not accept the submitted Proofs of Loss to release the funds, and instead insisted on a form of their choosing that included unnecessary and inaccurate language regarding the handling of the claims.

52. During the spring and summer of 2024, the Plaintiffs repeatedly followed up with Defendants' agents and employees in their ongoing effort to advance the claims process. Plaintiffs received no substantive response to these communications, even as the one-year anniversary of the Loss passed.

53. On September 26, 2024, the parties held a conference, during which the Plaintiffs were assured that Defendants would complete their valuation of the structure loss by November 5, 2024. Notably, Plaintiffs' consultants had completed their own estimates in about sixty days; Defendants' consultants were now more than a year into this process.

54. On October 10, 2024, the parties held a further conference regarding the business-income claim. Defendants reiterated their unsupportable position that "market conditions" caused by Typhoon Mawar justified a reduction in the valuation of the loss. At this meeting, Defendants committed to providing the legal opinion underlying this position. They have never done so.

55. Another month later, the parties held a further conference on November 21, 2024 to discuss the structure claims. Defendant DB represented that Calpac had completed a visual inspection and that a different company, Ripple, provided unit pricing. No justification for involving yet another third party was provided. Upon information and belief, Calpac's scope was not determined by reference to any hygienist report (despite Defendants earlier insisting on a hygienist analysist) but instead visual inspection.

56. There was no reason to bring yet another company (that is, Ripple) except to insert yet another unqualified "expert" to further reduce the estimated costs. Based on the history of the mal-adjustment of this claim, it is evident that Defendants have interjected unnecessary and unqualified "experts" at every stage to find excuses to reduce the claims values.

57. Calpac itself is not competent to estimate or adjust losses of this magnitude. But Defendants refused to accept even the calculations of their hand-picked company, instead attempting to find ways to drive down even these already too low calculations.

58. In the fall of 2024, Defendants also moved adjusting of the claim over to a different adjusting company, EASCO, after plaintiffs complained that Defendants were using an unlicensed adjusting company (Incok) that, in addition to its lack of licensure, was unknowledgeable about construction or insurance policies and was incapable of communicating in a constructive way. Incok, which had been to this time the Plaintiffs' only contact, was manifestly unqualified for this role.

59. In addition to arbitrarily reducing the scope of the Loss, Defendants claimed an inappropriate and unsupportable double depreciation on the structure losses. Defendants contended, with no basis in law or the Policies, that the valuation of the roof and other items should be first reduced by a fixed percentage and *then* have depreciation applied.

60. On December 3, 2024, the parties held yet another conference. Defendants had still not

provided detailed cost estimates for the structure claims.  Nothing was accomplished at this conference, but Defendants again promised to provide detailed documentation for review and discussion.

61.     The parties held a further conference on January 7, 2025.  When questioned about Calpac's failure to use the hygienist data, Defendants' representatives had no explanations or solutions.  Defendants, however, tried to blame plaintiffs and their representatives for the lack of meaningful progress on the claim.

62.     Three more weeks passed.  On January 27, 2025, the parties spoke again about the structure claims.  The parties discussed the HVAC at Dusit Beach, which had not been included in defendant's evaluation.  Defendants acknowledged that Calpec was not qualified to evaluate the HVAC units.

63.     As the year has continued, Defendants have continued their pattern of vaguely promising progress but refusing to substantively advance the claim, provide documentation of its contentions, or engage in a meaningful effort at resolution.

64.     It would take the better part of two years before Defendants provided anything that purported to be estimates of the structure components of the Losses.  However, Defendants did not themselves conduct any measurements or prepare estimates, but instead more or less arbitrarily reduced the estimates prepared by Plaintiffs' consultants.

65.     As an illustrative example of Defendants' willfully malicious claims handling, the DB General Manager, Mr. Choi, who plaintiffs were told maintained responsibility for the claim, essentially never communicated with Plaintiffs.  Plaintiffs and their representatives made hundreds of calls and emails and received literally one single email from Mr. Choi over two years.

66.     To date, Defendant DB has made the following payments:

    a.   $2 million to Dusit Thani;

    b.   $2 million to Dusit Beach;

    c.   $1 million to Dusit Plaza.

67.     Plaintiffs' claims, after deductible, exceed $60,000,000.  Accordingly, two years after the loss, Defendants have paid less than 10 percent of the value of the claims under the Policies.

68. It has done so while repeatedly ignoring its obligations to its insureds, intentionally delaying the claim, refusing to provide materials necessary to evaluate the claim, and at every juncture looking out for its own interest at the expense of its insureds'.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT BY DUSIT THANI AGAINST DEFENDANTS

69. Plaintiffs repeat and reallege Paragraphs "1" through "68" above as though fully restated here.

70. Under the terms and conditions of the Dusit Thani Policy issued by Defendants, they are obligated to provide coverage for the Loss.

71. Plaintiff Dusit Thani provided Defendants with notice on a timely basis, paid all premiums owed under the Dusit Thani Policy, cooperated with Defendants' investigation of the Loss, and was otherwise in full compliance with all of its contractual obligations.

72. While Defendants have made small payments under the Dusit Thani Policy, they have failed or refused to pay the amount due under the contract of insurance.

73. Defendants' failure and refusal to provide Plaintiff Dusit Thani with coverage and to provide Plaintiff Dusit Thani with full and complete payment for any and all damages (less any applicable deductible) was and is in breach of its contractual obligations under the Dusit Thani Policy.

74. Plaintiff Dusit Thani has submitted the following claims under the Dusit Thani Policy for the Loss:

    a. Structure:

| Replacement Cost Value ("RCV") | Actual Cash Value ("ACV") | Deductible | Net ACV | Amt Over Policy Limits | Net Claim |
|---|---|---|---|---|---|
| $26,718,139.37 | $25,997,038.12 | $ (5,000,000) | $20,997,038.12 | $(997,038.12) | $20,000,000.00 |

    b. Business Income: $7,800,275

    c. Emergency Expenses: $342,042.86

    d. Claim Preparation Expenses: $50,000

75. To date, Defendants have paid $2,000,000 to Dusit Thani, leaving $26,142,317.86 to be

- 11 -

paid under the contract.

76. Plaintiff Dusit Thani is also entitled to prejudgment interest on the amounts not paid to date.

77. As a result thereof, Plaintiff Dusit Thani has sustained direct, consequential and extra contractual damages.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT BY DUSIT BEACH AGAINST DEFENDANTS**

78. Plaintiffs repeat and reallege Paragraphs "1" through "68" above as though fully restated here.

79. Under the terms and conditions of the Dusit Beach Policy issued by Defendants, they are obligated to provide coverage for the Loss.

80. Plaintiff Dusit Beach provided Defendants with notice on a timely basis, cooperated with Defendants' investigation of the Loss, paid all premiums owed under the Dusit Beach Policy, and was otherwise in full compliance with all of its contractual obligations.

81. While Defendants have made certain payments under the Dusit Beach Policy, they have failed or refused to pay the amount due under the contract of insurance.

82. Defendants' failure and refusal to provide Plaintiff Dusit Beach with coverage and to provide Plaintiff Dusit Beach with full and complete payment for any and all damages (less any applicable deductible) was and is in breach of its contractual obligations under the Dusit Beach Policy.

83. As a result thereof, Plaintiff Dusit Beach has sustained direct, consequential and extra contractual damages.

84. Plaintiff Dusit Beach has submitted the following claims under the Dusit Beach Policy for the Loss:

a. Structure:

| RCV | ACV | Deductible | Net ACV | Amt Over Limits | Net Claim |
|---|---|---|---|---|---|
| $41,578,986.78 | $38,816,413.89 | $(5,000,000) | $33,816,413.89 | $(13,816,413.89) | $20,000,000.00 |

b.  Business Income:  $8,164,780.00

c.  Emergency Expenses:  $825,565.96

d.  Claim Preparation Expenses:  $50,000

85.  To date, Defendants have paid $2,000,000 to Dusit Beach, leaving $26,990,345.96 to be paid under the contract.

86.  Plaintiff Dusit Beach is also entitled to prejudgment interest on the amounts not paid to date.

87.  As a result thereof, Plaintiff Dusit Beach has sustained direct, consequential and extra contractual damages.

<u>**THIRD CAUSE OF ACTION**</u>
<u>**BREACH OF CONTRACT BY DUSIT PLAZA AGAINST DEFENDANT**</u>
<u>**DB INSURANCE CO.**</u>

88.  Plaintiffs repeat and reallege Paragraphs "1" through "68" above as though fully restated here.

89.  Under the terms and conditions of the Dusit Plaza Policy issued by Defendant DB, it is obligated to provide coverage for the Loss.

90.  Plaintiffs Dusit Plaza provided Defendant DB with notice on a timely basis, paid all premiums owed under the Dusit Plaza Policy, cooperated with Defendant's investigation of the Loss, and was otherwise in full compliance with all of its contractual obligations.

91.  While Defendant DB has made certain payments under the Dusit Plaza Policy, it has failed or refused to pay the amount due under the contract of insurance.

92.  Defendant's failure and refusal to provide Plaintiffs Dusit Plaza with coverage and to provide Plaintiffs Dusit Plaza with full and complete payment for any and all damages (less any applicable deductible) was and is in breach of its contractual obligations under the Dusit Plaza Policy.

93.  As a result thereof, Plaintiffs Dusit Plaza have sustained direct, consequential and extra contractual damages.

94.  Plaintiffs Dusit Plaza have submitted the following claims under the Dusit Plaza Policy for the Loss:

- 13 -

a. Structure:

| RCV | ACV | Deductible | Net ACV | Amt Over Limits | Net Claim |
|---|---|---|---|---|---|
| $9,306,929.51 | $9,246,616.62 | $(350,000) | $8,896,616.62 | --- | $8,896,616.62 |

b. Emergency Expenses: $89,404.73

95. To date, Defendant DB has paid Dusit Plaza $1,000,000, leaving $7,986,021.35 to be paid under the contract.

96. Plaintiffs Dusit Plazas are also entitled to prejudgment interest on the amounts not paid to date.

97. As a result thereof, Plaintiffs Dusit Plaza have sustained direct, consequential and extra contractual damages.

**FOURTH CAUSE OF ACTION**
**BREACH OF GOOD FAITH AND FAIR DEALING BY DUSIT THANI**
**AGAINST DEFENDANTS**

98. Plaintiffs repeat and reallege Paragraphs "1" through "68" above as though fully restated here.

99. The Dusit Thani Policy, like all contracts, is subject to a duty of good faith and fair dealing.

100. Defendants owed Plaintiff Dusit Thani a duty of good faith and fair dealing in their performance of the contract, including their handling of the subject insurance claim.

101. Defendants have violated this duty of good faith and fair dealing by, among other things:

a. Unduly delaying payments where they knew money was owed;

b. Misrepresenting policy provisions (including, but not limited, to the business-income policy coverage);

c. Failing to respond in a timely manner to inquiries of the insured;

d. Failing to provide estimates of damage upon request;

e. Relying upon adjusters or other professionals without minimal professional

- 14 -

COMPLAINT

qualifications;

f. Refusing to consider information prepared by their own retained consultants when these findings were adverse to the position they wished to maintain;

g. Requiring the provision of information and materials not necessary to adjust the claim;

h. Failing to communicate with reasonable promptness;

i. Failing to act in good faith;

j. Failing or refusing to respond in a timely, or any fashion, to the submission of Proofs of Loss;

k. Unreasonably delaying claim resolution by insisting on compliance with specific forms; and

l. Failing to provide explanation or justification for claims positions.

102. Defendants have accordingly breached their duty of good faith and fair dealing.

103. As a direct result of Defendants' breach of the duty of good faith and fair dealing, Plaintiff Dusit Thani has suffered damages.

104. As a result of Defendants' breach of the duty of good faith and fair dealing, Plaintiff Dusit Thani has been forced to retain the services of insurance consultants and attorneys, which should be compensated by Defendants.

105. Plaintiff Dusit Thani is also incurring interest and other expenses as a result of Defendants' breach of the duty of good faith and fair dealing.

106. In breaching the duty of good faith and fair dealing, Defendants acted with malice, fraud and oppression in that their deliberate refusal and failure to timely and effectively adjust Plaintiff Dusit Thani's Typhoon Mawar claims and to pay the amounts properly due on such claims were carried on by Defendants with a willful and conscious disregard of the rights of the Plaintiff Dusit Thani under the Dusit Thani Policy. Plaintiff Dusit Thani is entitled to an award of punitive damages sufficient in magnitude, as shall be established at trial, to effectively punish Defendants for their despicable conduct and to deter Defendants and other insurance carriers from engaging in like and similar conduct to avoid paying insureds in Guam amounts properly due in the aftermath of

typhoons or other natural disasters.

**FIFTH CAUSE OF ACTION**
**BREACH OF GOOD FAITH AND FAIR DEALING BY DUSIT BEACH**
**AGAINST DEFENDANTS**

107. Plaintiffs repeat and reallege Paragraphs "1" through "68" above as though fully restated here.

108. The Dusit Beach Policy, like all contracts, is subject to a duty of good faith and fair dealing.

109. Defendants owed Plaintiff Dusit Beach a duty of good faith and fair dealing in their performance of the contract, including their handling of the subject insurance claim.

110. Defendants have violated this duty of good faith and fair dealing by, among other things:

   a. Unduly delaying payments where they knew money was owed;

   b. Misrepresenting policy provisions (including, but not limited, to the business-income policy coverage);

   c. Failing to respond in a timely manner to inquiries of the insured;

   d. Failing to provide estimates of damage upon request;

   e. Relying upon adjusters or other professionals without minimal professional qualifications;

   f. Refusing to consider information prepared by their own retained consultants when these findings were adverse to the position they wished to maintain;

   g. Requiring the provision of information and materials not necessary to adjust the claim;

   h. Failing to communicate with reasonable promptness;

   i. Failing or refusing to respond in a timely, or any fashion, to the submission of Proofs of Loss;

   j. Failing to act in good faith;

   k. Unreasonably delaying claim resolution by insisting on compliance with specific forms; and

- 16 -

l. Failing to provide explanation or justification for claims positions.

111. Defendants have accordingly breached their duty of good faith and fair dealing.

112. As a direct result of Defendants' breach of the duty of good faith and fair dealing, Plaintiff Dusit Beach has suffered damages.

113. As a result of Defendants' breach of the duty of good faith and fair dealing, Plaintiff Dusit Beach has been forced to retain the services of insurance consultants and attorneys, which should be compensated by Defendants.

114. Plaintiff Dusit Beach is also incurring interest and other expenses as a result of Defendants' breach of the duty of good faith and fair dealing.

115. In breaching the duty of good faith and fair dealing, Defendants acted with malice, fraud and oppression in that their deliberate refusal and failure to timely and effectively adjust Plaintiff Dusit Beach's Typhoon Mawar claims and to pay the amounts properly due on such claims were carried on by Defendants with a willful and conscious disregard of the rights of the Plaintiffs under the Dusit Beach Policy. Plaintiff Dusit Beach is entitled to an award of punitive damages sufficient in magnitude, as shall be established at trial, to effectively punish Defendants for their despicable conduct and to deter Defendants and other insurance carriers from engaging in like and similar conduct to avoid paying insureds in Guam amounts properly due in the aftermath of typhoons or other natural disasters.

### SIXTH CAUSE OF ACTION
### BREACH OF GOOD FAITH AND FAIR DEALING BY DUSIT PLAZA AGAINST DEFENDANT DB

116. Plaintiffs repeat and reallege Paragraphs "1" through "68" above as though fully restated here.

117. The Dusit Plaza Policy, like all contracts, is subject to a duty of good faith and fair dealing.

118. Defendant DB owed Plaintiffs Dusit Plaza a duty of good faith and fair dealing in its performance of the contract, including its handling of the subject insurance claim.

119. Defendant has violated this duty of good faith and fair dealing by, among other things:

COMPLAINT

a. Unduly delaying payments where they knew money was owed;

b. Misrepresenting policy provisions (including, but not limited, to the business-income policy coverage);

c. Failing to respond in a timely manner to inquiries of the insured;

d. Failing to provide estimates of damage upon request;

e. Relying upon adjusters or other professionals without minimal professional qualifications;

f. Refusing to consider information prepared by their own retained consultants when these findings were adverse to the position they wished to maintain;

g. Requiring the provision of information and materials not necessary to adjust the claim;

h. Failing to communicate with reasonable promptness;

i. Failing or refusing to respond in a timely, or any fashion, to the submission of Proofs of Loss;

j. Failing to act in good faith;

k. Unreasonably delaying claim resolution by insisting on compliance with specific forms; and

l. Failing to provide explanation or justification for claims positions.

120. Defendant DB has accordingly breached its duty of good faith and fair dealing.

121. As a direct result of Defendant DB's breach of the duty of good faith and fair dealing, Plaintiffs Dusit Plaza have suffered damages.

122. As a result of Defendant DB's breach of the duty of good faith and fair dealing, Plaintiffs Dusit Plaza have been forced to retain the services of insurance consultants and attorneys, which should be compensated by Defendant.

123. Plaintiffs Dusit Plaza are also incurring interest and other expenses as a result of Defendant DB's breach of the duty of good faith and fair dealing.

124. In breaching the duty of good faith and fair dealing, Defendant DB acted with malice, fraud and oppression in that its deliberate refusal and failure to timely and effectively adjust Plaintiffs

Dusit Plaza's Typhoon Mawar claims and to pay the amounts properly due on such claims were carried on by Defendant DB with a willful and conscious disregard of the rights of the Plaintiffs Dusit Plaza under the Dusit Plaza Policy.  Plaintiffs Dusit Plaza are entitled to an award of punitive damages sufficient in magnitude, as shall be established at trial, to effectively punish Defendant DB for its despicable conduct and to deter Defendant DB and other insurance carriers from engaging in like and similar conduct to avoid paying insureds in Guam amounts properly due in the aftermath of typhoons or other natural disasters.

## SEVENTH CAUSE OF ACTION
### TORTIOUS BREACH OF GOOD FAITH AND FAIR DEALING AND BAD FAITH BY DUSIT THANI AGAINST DEFENDANTS

125.    Plaintiffs repeat and reallege Paragraphs "1" through "68" above as though fully restated here.

126.    The Dusit Thani Policy, like all contracts, is subject to a duty of good faith and fair dealing.

127.    Defendants owed Plaintiff Dusit Thani a duty of good faith and fair dealing in their performance of the contract, including its handling of the subject insurance claim.  These violations constituted unfair claims settlement practices.

128.    Defendants are large, multinational companies with great resources that have used these resources to avoid clear contractual responsibilities while violating every tenet of good-faith claims handling.

129.    Defendants have acted in bad faith by breaching their duty of good faith and fair dealing by, among other things:

    a.    Unduly delaying payments where they knew money was owed;

    b.    Misrepresenting policy provisions (including, but not limited, to the business-income policy coverage);

    c.    Failing to respond in a timely manner to inquiries of the insured;

    d.    Failing to provide estimates of damage upon request;

    e.    Relying upon adjusters or other professionals without minimal professional

COMPLAINT

qualifications;

f.  Refusing to consider information prepared by their own retained consultants when these findings were adverse to the position they wished to maintain;

g.  Requiring the provision of information and materials not necessary to adjust the claim;

h.  Failing to communicate with reasonable promptness;

i.  Failing to act in good faith;

j.  Failing or refusing to respond in a timely, or any fashion, to the submission of Proofs of Loss;

k.  Unreasonably delaying claim resolution by insisting on compliance with specific forms; and

l.  Failing to provide explanation or justification for claims positions.

130.  As a result of Defendants' breach of the duty of good faith and fair dealing, Plaintiff Dusit Thani has been forced to retain the services of insurance consultants and attorneys, which should be compensated by Defendants.

131.  Plaintiff Dusit Thani is also incurring interest and other expenses as a result of Defendants' breach of the duty of good faith and fair dealing.

132.  In acting in bad faith, Defendants acted with malice, fraud and oppression in that their deliberate refusal and failure to timely and effectively adjust Plaintiff Dusit Thani's Typhoon Mawar claims and to pay the amounts properly due on such claims were carried on by Defendants with a willful and conscious disregard of the rights of the Plaintiff Dusit Thani under the Dusit Thani Policy.  Plaintiff Dusit Thani is entitled to an award of punitive damages sufficient in magnitude, as shall be established at trial, to effectively punish Defendants for their despicable conduct and to deter Defendants and other insurance carriers from engaging in like and similar conduct to avoid paying insureds in Guam amounts properly due in the aftermath of typhoons or other natural disasters.

//

//

133.     Plaintiffs repeat and reallege Paragraphs "1" through "68" above as though fully restated here.

134.     The Dusit Beach Policy, like all contracts, is subject to a duty of good faith and fair dealing.

135.     Defendants owed Plaintiff Dusit Beach a duty of good faith and fair dealing in their performance of the contract, including its handling of the subject insurance claim.  These violations constituted unfair claims settlement practices.

136.     Defendants are large, multinational companies with great resources that have used these resources to avoid clear contractual responsibilities while violating every tenet of good-faith claims handling.

137.     Defendants have acted in bad faith by breaching their duty of good faith and fair dealing by, among other things:

   a.   Unduly delaying payments where they knew money was owed;

   b.   Misrepresenting policy provisions (including, but not limited, to the business-income policy coverage);

   c.   Failing to respond in a timely manner to inquiries of the insured;

   d.   Failing to provide estimates of damage upon request;

   e.   Relying upon adjusters or other professionals without minimal professional qualifications;

   f.   Refusing to consider information prepared by their own retained consultants when these findings were adverse to the position they wished to maintain;

   g.   Requiring the provision of information and materials not necessary to adjust the claim;

   h.   Failing to communicate with reasonable promptness;

   i.   Failing to act in good faith;

   j.   Failing or refusing to respond in a timely, or any fashion, to the submission of Proofs of

Loss;

k. Unreasonably delaying claim resolution by insisting on compliance with specific forms; and

l. Failing to provide explanation or justification for claims positions.

138. As a result of Defendants' breach of the duty of good faith and fair dealing, Plaintiff Dusit Beach has been forced to retain the services of insurance consultants and attorneys, which should be compensated by Defendants.

139. Plaintiff Dusit Beach is also incurring interest and other expenses as a result of Defendants' breach of the duty of good faith and fair dealing.

140. In acting in bad faith, Defendants acted with malice, fraud and oppression in that their deliberate refusal and failure to timely and effectively adjust Plaintiff Dusit Beach's Typhoon Mawar claims and to pay the amounts properly due on such claims were carried on by Defendants with a willful and conscious disregard of the rights of the Plaintiff Dusit Beach under the Dusit Beach Policy. Plaintiff Dusit Beach is entitled to an award of punitive damages sufficient in magnitude, as shall be established at trial, to effectively punish Defendants for their despicable conduct and to deter Defendants and other insurance carriers from engaging in like and similar conduct to avoid paying insureds in Guam amounts properly due in the aftermath of typhoons or other natural disasters.

### NINTH CAUSE OF ACTION
### TORTIOUS BREACH OF GOOD FAITH AND FAIR DEALING AND BAD FAITH BY DUSIT PLAZA AGAINST DEFENDANT DB

141. Plaintiffs repeat and reallege Paragraphs "1" through "68" above as though fully restated here.

142. The Dusit Plaza Policy, like all contracts, is subject to a duty of good faith and fair dealing.

143. Defendant DB owed Plaintiffs Dusit Plaza a duty of good faith and fair dealing in their performance of the contract, including its handling of the subject insurance claim. These violations

constituted unfair claims settlement practices.

144. Defendant DB is a large, multinational company with great resources that has used these resources to avoid clear contractual responsibilities while violating every tenet of good-faith claims handling.

145. Defendant DB has acted in bad faith by breaching their duty of good faith and fair dealing by, among other things:

    a. Unduly delaying payments where they knew money was owed;

    b. Misrepresenting policy provisions (including, but not limited, to the business-income policy coverage);

    c. Failing to respond in a timely manner to inquiries of the insured;

    d. Failing to provide estimates of damage upon request;

    e. Relying upon adjusters or other professionals without minimal professional qualifications;

    f. Refusing to consider information prepared by their own retained consultants when these findings were adverse to the position they wished to maintain;

    g. Requiring the provision of information and materials not necessary to adjust the claim;

    h. Failing to communicate with reasonable promptness;

    i. Failing to act in good faith;

    j. Failing or refusing to respond in a timely, or any fashion, to the submission of Proofs of Loss;

    k. Unreasonably delaying claim resolution by insisting on compliance with specific forms; and

    l. Failing to provide explanation or justification for claims positions.

146. As a result of Defendant DB's breach of the duty of good faith and fair dealing, Plaintiffs Dusit Plaza have been forced to retain the services of insurance consultants and attorneys, which should be compensated by Defendants.

147. Plaintiffs Dusit Plaza are also incurring interest and other expenses as a result of

Defendant DB's breach of the duty of good faith and fair dealing.

148. In acting in bad faith, Defendant DB acted with malice, fraud and oppression in that their deliberate refusal and failure to timely and effectively adjust Plaintiffs Dusit Plaza's Typhoon Mawar claims and to pay the amounts properly due on such claims were carried on by Defendant DB with a willful and conscious disregard of the rights of the Plaintiffs Dusit Plaza under the Dusit Plaza Policy. Plaintiffs Dusit Plaza are entitled to an award of punitive damages sufficient in magnitude, as shall be established at trial, to effectively punish Defendant DB for its despicable conduct and to deter Defendant DB and other insurance carriers from engaging in like and similar conduct to avoid paying insureds in Guam amounts properly due in the aftermath of typhoons or other natural disasters.

### TENTH CAUSE OF ACTION
### DECLARATORY JUDGMENT BY DUSIT THANI AGAINST DEFENDANTS

149. Plaintiffs repeat and reallege Paragraphs "1" through "68" above as though fully restated here.

150. An actual controversy has arisen and now exists between Plaintiff Dusit Thani and Defendants concerning their respective rights and obligations under the Dusit Thani Policy.

151. Plaintiff Dusit Thani contends that under the terms and conditions of the Dusit Thani Policy issued by Defendants, they are obligated to provide coverage for the Loss.

152. Plaintiff Dusit Thani provided Defendants with notice on a timely basis, paid all premiums owed under the Dusit Thani Policy, and was otherwise in full compliance with all of its contractual obligations.

153. While Defendants have made certain payments under the Dusit Thani Policy, they have failed or refused to pay the amount due under the contract of insurance.

154. Coverage should properly be enforced, and Plaintiff Dusit Thani's losses and damages paid by Defendants.

155. Defendants wrongfully refused to cover the Loss, and as such, an actual controversy exists among the parties concerning the rights and obligations under the Dusit Thani Policy.

156. As a result of the foregoing, Plaintiff Dusit Thani seeks a judicial determination of its

- 24 -

rights under the Dusit Thani Policy, including its right to payment for all losses and any and all additional damages, costs, fees and interest to which it may be lawfully entitled.

### ELEVENTH CAUSE OF ACTION
### DECLARATORY JUDGMENT BY DUSIT BEACH AGAINST DEFENDANTS

157. Plaintiffs repeat and reallege Paragraphs "1" through "68" above as though fully restated here.

158. An actual controversy has arisen and now exists between Plaintiff Dusit Thani and Defendants concerning their respective rights and obligations under the Dusit Thani Policy.

159. Plaintiff Dusit Beach contends that under the terms and conditions of the Dusit Beach Policy issued by Defendants, they are obligated to provide coverage for the Loss.

160. Plaintiff Dusit Beach provided Defendants with notice on a timely basis, paid all premiums owed under the Dusit Beach Policy, and was otherwise in full compliance with all of its contractual obligations.

161. While Defendants have made certain payments under the Dusit Beach Policy, they have failed or refused to pay the amount due under the contract of insurance.

162. Coverage should properly be enforced, and Plaintiff Dusit Beach's losses and damages paid by Defendants.

163. Defendants wrongfully refused to cover the Loss, and as such, an actual controversy exists among the parties concerning the rights and obligations under the Dusit Beach Policy.

164. As a result of the foregoing, Plaintiff Dusit Beach seeks a judicial determination of its rights under the Dusit Beach Policy, including payment for all losses and any and all additional damages, costs, fees and interest to which it may be lawfully entitled.

### TWELFTH CAUSE OF ACTION
### DECLARATORY JUDGMENT BY DUSIT BEACH AGAINST DEFENDANT DB

165. Plaintiffs repeat and reallege Paragraphs "1" through "68" above as though fully restated here.

166. An actual controversy has arisen and now exists between Plaintiffs Dusit Plaza and

- 25 -

Defendant DB concerning their respective rights and obligations under the Dusit Plaza Policy.

167. Plaintiffs Dusit Plaza contend that under the terms and conditions of the Dusit Plaza Policy issued by Defendant DB, Defendant DB is obligated to provide coverage for the Loss.

168. Plaintiffs Dusit Plaza provided Defendant DB with notice on a timely basis, paid all premiums owed under the Dusit Plaza Policy, and was otherwise in full compliance with all of its contractual obligations.

169. While Defendant DB has made certain payments under the Dusit Plaza Policy, it has failed or refused to pay the amount due under the contract of insurance.

170. Coverage should properly be enforced, and Plaintiffs Dusit Plaza's losses and damages paid by Defendant DB.

171. Defendant DB wrongfully refused to cover the Loss, and as such, an actual controversy exists among the parties concerning the rights and obligations under the Dusit Plaza Policy.

172. As a result of the foregoing, Plaintiffs Dusit Plaza seek a judicial determination regarding its rights under the Dusit Plaza Policy, including payment for all losses and any and all additional damages, costs, fees and interest to which it may be lawfully entitled.

**JURY DEMAND**

173. Plaintiffs demand a trial by jury on all issues and claims.

WHEREFORE, Plaintiff demands judgment be entered against the Defendants jointly and/or severally for the following relief:

    a. Compensatory, consequential and extra contractual damages arising out of the Loss of May 24, 2023 in an amount to be determined at trial but not less than $59,248,865.17;

    b. A judgment enforcing the Policy and declaring that Defendants are obligated to provide Plaintiff with insurance coverage and pay all damages arising from the May 24, 2023 loss, including costs and interest;

    c. Attorney's fees and costs in an amount to be determined;

    d. Applicable interest from the date of Loss or other date determined by the Court;

e.  Punitive damages in an amount to be determined; and

f.  For such other and further relief as this Court deems just and proper.

Dated:   May 21, 2025

CIVILLE & TANG, PLLC

*/s/ G. Patrick Civille*

G. Patrick Civille
*Attorneys for Plaintiffs*

Kelsey W. Shannon, Esq.
(*Pro Hac Vice* Application Forthcoming)
LYNN LAW FIRM LLP
*Attorneys for Plaintiffs*
333 W. Washington Street, Suite 100
Syracuse, NY  13202
Telephone:  (315) 474-1267
Email: kshannon@lynnlaw.com

- 27 -